# EXHIBIT

MLGW Response Statement to EEOC

# BOYLE BRASHER LLC

Chandra S. Madison*
cmadison@boylebrasher.com

*LICENSED IN TENNESSEE

ATTORNEYS AT LAW

BRINKLEY PLAZA
80 MONROE AVENUE, SUITE 410

MEMPHIS, TN 38103

(901) 521-2860
FAX (901) 521-2861
www.boylebrasher.com

5000 W. MAIN STREET
P.O. BOX 23560
BELLEVILLE, IL 62223-0560
(618) 277-9000
FAX (618) 277-4594

1010 MARKET STREET
SUITE 950
ST. LOUIS, MO 63101
(314) 621-7700
FAX (314) 621-1088

December 7, 2018

**Via Email and U. S. Mail**

Mr. William Brown
U.S. Equal Employment Opportunity
Commission
1407 Union Ave.
Memphis, TN 38104

      RE: **Jacqueline Williams**
            **EEOC Charge No. 490-2018-03170**

Dear Mr. William Brown:

    Our law firm represents Memphis Light, Gas & Water ("MLGW") with regard to the above-referenced charge, filed by Ms. Jacqueline Williams ("Complainant") on or around August 31, 2018 (the "Charge"). On behalf of our client, we deny all allegations of sex-based discrimination and retaliation alleged by Complainant in her Charge and submit this statement of position in response to same.

## INTRODUCTION

    MLGW is a municipal utility service owned by the City of Memphis that provides light, gas, and water services to approximately 430,000 citizens across Memphis and Shelby County, Tennessee. In providing this service, MLGW employs over 4000 full-time employees.

### MLGW's Employment Policies and Procedures[1]

**Anti-Discrimination/Harassment and Retaliation.**

    MLGW is dedicated to the fair and equitable treatment of all its employees, irrespective of an employee's classification or any immutable characteristic that he or she may possess. Consistent with its values, MLGW maintains an anti-discrimination/harassment policy, and a policy prohibiting retaliation.

---

[1] MLGW's Disciplinary Action Policy, and Conduct During Investigations and Fostering Respectful Work Environment Labor and Employee Relations Bulletins are attached hereto as collective Exhibit A.

December 7, 2018
Page 2

MLGW also employs several policies for the fair and consistent resolution of employee-related issues. Particularly relevant to this Charge are the following employee policies, which are provided below in relevant part:

<u>Disciplinary Actions.</u>

> . . . It is the policy of MLGW to initiate appropriate disciplinary action whenever an employee violates the company rules and regulations . . . When a violation occurs, supervision will consider the seriousness of the offense committed ***and the past record of the offending employee in determining an appropriate action***. (emphasis added).
>
> . . .
>
> A. Progressive Discipline (Permanent Employees)
>
> Discipline, when properly and fairly administered by management, can be a very effective tool in correcting the problem employee as well as a tool for improving overall employee morale. In administering discipline, supervisors should keep in mind the following components of progressive discipline:
>
> 1. ***Disciplinary action should always be designed to fit the offense.*** (emphasis added).
>
> . . .
>
> B. Conduct During Investigations
>
> Employees will furnish information and testify freely and honestly in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or ***willfully providing inaccurate testimony in connection with an investigation or hearing may be grounds for disciplinary action up to and including discharge***. (emphasis added).
>
> . . .
>
> VI. PROCEDURE
>
> A. Administering Progressive Discipline (Permanent Employees)
>
> These five (5) progressive steps will be followed under normal circumstances:
>
>     a. Oral reprimand
>     b. Written reprimand

December 7, 2018
Page 3

    c. Written reprimand with suspension and warning of more serious disciplinary action
    d. Written reprimand with longer suspension and warning of more serious disciplinary action including possible discharge
    e. Discharge

***The seriousness of the offense will determine how many steps are to be followed.*** (emphasis added).

## FACTUAL BACKGROUND

MLGW hired Complainant, a female, on September 2, 2012 as "Clerical Support 1". At all times relevant to this Charge, Complainant was classified as "Clerical Support 3". As Clerical Support 3, Complainant was required to perform several administrative tasks and provide customer service support. Specifically, Complainant was required to monitor and process area work, customer calls, and work requests. Complainant was also to: (1) *receive and direct customers and telephone calls*; (2) relay messages; (3) schedule supervisor and area meetings; (4) *compose and prepare various forms and reports*; (5) *enter employee time*; and (6) *perform other duties as directed*[2]. At all times relevant to this Charge, Keith Newbern, Supervisor of Field Operations and Mike Page, Customer Service Supervisor, were Complainant's direct supervisors.

### A. Complainant's Prior Discipline History

Since beginning her employment at MLGW, Complainant has had a rather tumultuous disciplinary history. Notably, most of the discipline that MLGW has issued to the Complainant has been the result of the Complainant: (1) refusing to perform tasks as assigned by her superiors; (2) bullying and/or harassing other employees; and (3) offering false testimony in connection with the internal investigations of her colleagues' complaints against her. A summary of Complainant's relevant prior discipline history is as follows:

- October 2014, Complainant received a Written Reprimand for insubordination when she refused to do work duties that her supervisor assigned to her;

- November 16, 2016, Complainant received a Warning for bullying/harassing a colleague and being untruthful in connection with an investigation in violation of the Discipline Policy;

- June 16, 2017, Complainant received a five (5) day suspension without pay for bullying/harassing another colleague on the basis of his sexual orientation and being untruthful in connection with an investigation in violation of the Discipline Policy.

***HR specifically warned Complainant when issuing her discipline that any future violations of a similar nature would result in additional, more severe discipline.***[3]

---

[2] *See* Clerical Support 3 job description, attached hereto as Exhibit B.
[3] *See Id.*

December 7, 2018
Page 4

## B. Complainant's EEO Charge and Supplements

### (1) *May 03, 2018 EEO Charge*

On May 3, 2018 Complainant filed an internal EEO Charge ("EEO Charge") against her supervisors, Newbern and Page, for creating a "hostile work environment" based on her sex. In her EEO Charge, the Complainant alleged that Newbern commented to a co-worker, Nakia Rutherford, that the Complainant "was a troublemaker, a problem and [that she] files charges on people" and that Rutherford should "stay away" from Complainant. Regarding supervisor Page, the Complainant alleged that he told another employee, Ulysses Lewis, that the Complainant was "mad and upset," and that Page often called the employees "morons."[4] Complainant claimed that Newbern's and Page's alleged actions were in retaliation for her refusal to complete their supervisor performance appraisals. Because the Complainant refused to do the appraisals, the Complainant alleged that Page and Newbern contacted another clerk at home and "compensated her personally" for doing their appraisals.

In support of Complainant, Rutherford submitted a written statement to HR concerning the alleged conversation that Newbern had with Rutherford advising him to "stay away" from Complainant.

### (2) *July 11, 2018 Occurrence and Supplement to the EEOC Charge*

While the investigation to the EEO Charge was pending, the Complainant had a disagreement with Newbern that resulted in the Complainant calling the Memphis Police Department ("MPD") to MLGW's Hickory Hill location. Specifically, on July 11, 2018 Complainant got upset and stormed out of her work office because Newbern questioned Complainant about her failure to answer telephone calls. While Complainant was exiting the office, she dialed MPD to report Newbern's "intimidating and aggressive behavior." She also made similar allegations in a written statement that she filed with MLGW Security. Complainant told MLGW Security that she called the MPD because Newbern was "yelling in an aggressively and frightening manner" and followed closely behind her as she exited the office, so she "feared for her safety."

MPD police officers arrived at the scene shortly after MPD dispatch received the Complainant's report. The officers spoke to Newbern, who had been working at his desk and was unaware that Complainant had called the authorities. Determining that there was no cause for concern, the MPD police officers left MLGW shortly after their arrival.

### (3) *July 24, 2018 Supplement to the EEO Charge*

Complainant requested that Newbern communicate with her in writing while her EEO investigation was pending. Accordingly, on July 19, 2018 Newbern sent a memorandum to the Complainant in which he politely requested that the Complainant timely complete "post notices" and employee time entries so that Newbern could timely complete his part of the time-approval process and pay his employees on time. Newbern ended the memorandum by stating "[a]s always, your corporation is greatly appreciated and if you should have any questions, please let me know

---

[4] The Complainant does not state the gender of the employees that Page allegedly called "morons."

December 7, 2018
Page 5

(hereinafter, the "Memo"). The duties outlined in the Memo were a part of Complainant's normal job duties.

Newbern's Memo offended Complainant greatly. As such, on July 2018 she filed yet another complaint against Newbern in Labor Relations. In this complaint, Complainant stated that "[m]y job as a Clerical Support III has a job description, which I received during my interview for this job and from compensation. I'm being retaliated against and harassed because of the charge I filed with employee and labor relations. . . Mr. Newbern exhibits conduct that is unreasonably interfering with my work performance. He is also creating an intimidating, hostile and offensive working environment."[5]

### C. The Investigation

Paula Mitchell, HR investigator, investigated Complainant's EEO Charge and all its supplements. Additionally, Al Hardy, Corporate Security Supervisor, investigated Complainant's allegations regarding the July 11, 2018 occurrence to determine whether anyone violated MLGW's Workplace Violence Policy. Michell and Hardy interviewed several witnesses with direct knowledge of the facts concerning Complainant's allegations. Significantly, notwithstanding Rutherford's statement, all the witnesses, even those identified by Complainant, affirmatively stated that Complainant's allegations were false.

*Rutherford's Statement.* Rutherford was the only witness who supported any of the Complainant's allegations in her EEO Charge. Mitchell and Hardy could not determine that Rutherford was untruthful about his conversation with Newbern because there were no witnesses – making it a matter of Newbern's word against Rutherford's. However, Mitchell and Rutherford concluded that Rutherford was not truthful about other matters *not at issue in the investigation* (e.g., that Rutherford had never taken Complainant to lunch in a company car), because those statements were contradicted by other witnesses. Accordingly, Mitchell and Hardy determined that Rutherford was not credible, and afforded his statement in support of Complainant little to no weight.

### D. The Investigators' Recommendation and Complainant's Subsequent Discipline

Based on their findings during the EEO Charge Investigation, Mitchell issued a no-cause finding of harassment based on sex and/or retaliation, and Hardy issued a no-cause finding for his violation of the Workplace Violence Policy investigation.[6] However, because the Complainant: (1) made false accusations against her supervisors and others in filing her EEO Charge; (2) provided false testimony in connection with the investigation of her EEO Charge; (3) gave false statements and/or written reports against her supervisors and others to the MPD and MLGW Corporate Security; and (4) had been disciplined several times for the same or similar conduct (i.e., insubordination and making false allegations/statements in connection with an investigation), Mitchell recommended to the committee of upper-management that issues employee discipline, that the Complainant receive another

---

[5] Complainant's EEO Charge and all subsequent supplements are hereafter referred to collectively as the "EEO Charge".
[6] Hardy also found no cause for violation of the MLGW Workplace Violence Policy. Hardy does not recommend employee discipline to HR unless he finds a violation of the Workplace Violence Policy. Accordingly, Hardy did not recommend that the Complainant receive discipline in connection with her conduct in the EEO Charge.

December 7, 2018
Page 6

five (5) day suspension for her actions.[7] Accordingly, on August 23, 2018 MLGW suspended Complainant for five (5) days, without pay.[8]

## THE CHARGE AND RESPONSE

On August 31, 2018, the Complainant filed the instant charge with the EEOC (the "Charge"). In her Charge, the Complainant alleges that: (1) on May 3, 2018 she filed an internal complaint of sex discrimination and harassment supported by a male witness' testimony (i.e., Nakia Rutherford); (2) On August 30, 2018 MLGW notified the Complainant that MLGW believed that she was being untruthful; and thus, suspended her without pay on August 31, 2018; however, (3) despite believing that the male witness was also untruthful, MLGW did not suspend the male witness.

What Complainant essentially alleges in her Charge is a disparate-treatment discrimination claim. Meaning, that MLGW discriminated against Complainant, a woman, in violation of Title VII when it disciplined her for engaging the same or substantially similar behavior as Rutherford (i.e., willfully providing false testimony in connection with an investigation), a male.[9] However, MLGW's decision to suspend the Complainant without pay was in no way based on her status as a woman, or for any other unlawful reason whatsoever. Rather, as explained more fully below, MLGW treated Complainant differently than Rutherford for purposes of discipline in this instance because: (1) they have different discipline histories; and (2) their conduct in connection with the EEO investigation was materially dissimilar.

### I. MLGW disciplined the Complainant because she violated MLGW Policy.

Complainants in gender-based disparate treatment cases carry the initial burden of showing that: (1) she belongs to a protected class; (2) she was disciplined for violating an employment policy; and (3) that [male] employees were not disciplined or were treated better for the same or similar conduct.[10] If a complainant can demonstrate that the three (3) aforementioned-factors are met, the burden will shift to the employer to show a *"legitimate, non-discriminatory reason for the adverse employment action.*[11]"

Like Complainant, Rutherford was not truthful in connection with the investigation of Complainant's EEO Complaint, and MLGW did not discipline Rutherford. However, if that were the extent of the analysis required to sustain a viable Title VII claim against an employer, most, if not all employers – particularly those that utilize a progressive discipline policy - would routinely violate Title VII. Therefore, the analysis for whether MLGW unlawfully violated Title VII in this instance must start with an analysis of whether MLGW had a "legitimate, non-discriminatory reason" for disciplining Complainant in the first place - and based on the facts of this Charge, indeed, MLGW did.[12] As stated above, MLGW suspended the Complainant in this Charge because the overwhelming evidence gathered through Mitchell's and Hardy's investigation of Complainant's EEO Charge supported a

---

[7] Neither Newbern nor Page were a part of the management committee that decided to adopt Mitchell's recommendation to discipline Complainant.
[8] See Complainant's August 23, 2018 Discipline letter, attached hereto as Exhibit C.
[9] See Jurrus v. Frank, 932 F.Supp 988, 993 (N.D.OH.1993).
[10] See Davis v. Monsanto Chemical Co., 858 F.2d 345, 347 48 (6th Cir. 1998).
[11] Id.
[12] See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).

finding that the Complainant made false allegations against her supervisors and a colleague in patent disregard of several MLGW policies. Particularly, Complainant's defamatory conduct violated the Disciplinary Actions, Conduct During Investigations Policy, as well as the Conduct During Investigations and the Fostering the Respectful Work Environment Labor Relations Bulletins, *supra* – each of which clearly provide that engaging in behavior such as Complainant's ***will not be tolerated and may result in disciplinary action up to, and including termination***.

Further, because MLGW disciplined Complainant several times before *for the same or similar conduct* – she was on notice that *continuing to engage* in similar dishonest, insubordinate, and/or harassing behavior would result in additional, and potentially more severe discipline. Nevertheless, the Complainant continued to disrupt her workplace by making false allegations against colleagues to HR, MLGW Corporate Security, and the MPD. Accordingly, consistent with the provisions of MLGW's Progressive Discipline Policy, MLGW suspended the Complainant without pay for her egregious violations of company policy. Suspending or even terminating an employee for a violation of company rules and/or policies is entirely consistent with non-discriminatory adverse employment action under federal law. *See*, e.g. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–507 (1993) (finding that the employer presented a non-discriminatory reason for terminating the plaintiff as a result of repeated, serious violations of company rules); *Jurrus* at 992 – 995 (finding that the employer legitimately terminated the plaintiff for insubordination when she argued with and cursed at her supervisor, who simply inquired why the plaintiff was in the restroom for an extended period of time); *Williams* at *4 (finding that the employer presented a legitimate, non-discriminatory reason for terminating the plaintiff, a banker, who posed for a magazine while wearing a bikini in violation of the bank's Code of Conduct).

## II. MLGW did not similarly discipline Rutherford because his conduct and discipline history were materially different than Complainant's.

MLGW's legitimate reason for disciplining Complainant aside, the question now becomes whether MLGW's stated reasons for disciplining Complainant is really a "cover up" or a "pretext" for the fact that it disciplined her because she is a woman.[13] To this end, Complainant essentially alleges in her Charge that the proof of MLGW's discriminatory motive for issuing discipline to her, is the fact that MLGW did not discipline Rutherford for engaging in the same conduct.[14] However, the explanation for the difference in discipline in this Charge is simple – Rutherford's discipline history and conduct as related to this Charge were distinctly and materially different than that of Complainant's; therefore, MLGW was entitled to treat Rutherford differently when deciding whether to issue discipline to him.

---

[13] *Id.*

[14] Under federal law, an employee can show that an employer's stated reasons for taking an adverse employment action against an employee, such as suspending the Complainant in this Charge, are really a "pretext" for illegal discrimination by: (a) presenting evidence that the employer's reason for the discipline has no basis in fact; (b) showing that the employer's reasons for the discipline did not actually motivate the employer; or (3) showing that the employer's reason for the discipline was insufficient to explain the employer's action. *See Hicks*, 509 U.S. at 508 – 11. Complainant cannot show that MLGW's reasons for disciplining her in this Charge was pretext under any prong of the above test.

December 7, 2018
Page 8

Rutherford and Complainant are different as they relate to this Charge for several reasons. First, MLGW did not determine that Rutherford was untruthful in regard to *matters not actually at issue in the EEO investigation*. In contrast, MLGW determined that *the entire basis* of Complainant's EEO Complaint (e.g., that Newbern was created a "hostile work environment" for her by "yelling and screaming" and acted in such a "threatening and aggressive" manner that she "feared for her safety"), was false. Second, MLGW has never disciplined Rutherford. Conversely, MLGW has repeatedly disciplined Complainant for substantially similar conduct to that at issue in this Charge. Finally, not only did Complainant file a false EEO Charge with MLGW and a false statement to MLGW Corporate Security against Newbern and/or others – she also *contacted the local police department*, during MLGW working hours and requested that they come to MLGW premises under circumstances that were later proven to be entirely *false*. Therefore, the differences between Rutherford and Complainant in this Charge are not "differences without distinction" or "pretext"; rather, these differences provided the sound, legal basis from which MLGW exercised their independent business judgment in determining how to issue discipline to their employees – which is their legal right to do.[15] *See e.g., Mitchell*, 964 F.2d at 583 (holding that *for an employee to be "similarly-situated" to the complainant for purposes of discipline, the comparable employee must be substantially similar in all respects*, including engaging in substantially identical conduct "without such differentiating or mitigating circumstances that would distinguish the comparator's conduct or the employer's treatment of them for it") (emphasis added); *Willingham*, 2010 WL 2650727 at *6 (*conduct is "substantially identical," only when it is similar in kind and severity*; thus, while both the plaintiff and a male employee appeared scantily clad in local publications in violation of the bank's Code of Conduct, the employer did not violate Title VII when it terminated plaintiff because the plaintiff distributed the publication to her colleagues *at work*, while the male employee did not); and *Jurris* at 994 – 997 (holding that although both employees cursed in the presence of their supervisor against company policy, the plaintiff cursed *at* the supervisor and had a "horrendous" discipline history; thus, the employer did not discriminate under Title VII for terminating the plaintiff but not disciplining the male comparator).

### III. There is no causal-connection between Complainant's discipline and the alleged discrimination based on her gender.

Importantly, even if MLGW's reasons for the alleged disparate treatment at issue in this Charge *were* pretextual, which they are not, it does not mean that MLGW's reasons for disciplining the Complainant were *unlawfully discriminatory*.[16] Irrespective of whether MLGW's reasons for disciplining Complainant were sound or even "unfair," the Complainant must show that her gender was the motivating factor in MLGW's treatment of her.[17] And, to this end, Complainant has alleged no facts in her Charge to indicate that MLGW disciplined her or treated her differently than Rutherford *because she is a woman*. Accordingly, the EEOC should dismiss this Charge.

### IV. Issuing discipline in accordance with an established, bona-fide Progressive Discipline Policy is not Retaliation.

---

[15] *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir.2004) (noting that "a plaintiff may not simply substitute [his or her] own business judgment for that of the defendant").
[16] *Hicks*, 509 U.S. at 508 – 11.
[17] *Jurrus*, 932 F. Supp. At 996 (citing *United States Postal Service v. Aikens*, 460 U.S. 711, 715 (1983)).

December 7, 2018
Page 9

### IV. Issuing discipline in accordance with an established, bona-fide Progressive Discipline Policy is not Retaliation.

Finally, MLGW did not retaliate against the Complainant by adhering to its well-established internal policies and procedures. As in a claim for disparate treatment, to establish a claim for retaliation based on sex-discrimination, a complainant must be able to show a causal link between the Complainant's protected activity and the adverse employment decision.[18] As mentioned above, there is no causal link between the Complainant's protected activity and MLGW's decision to discipline the Complainant. Indeed, MLGW disciplined the Complainant in light of the findings of the EEO Charge investigation and in accordance with its established Progressive Discipline Policy. As such, there is no factual basis from which the EEOC can determine that MLGW retaliated against the Complainant. Accordingly, the EEOC should likewise dismiss the Complainant's retaliation charge.

### CONCLUSION

The Complainant's claims of sex-based discrimination and retaliation are without merit. As such, MLGW respectfully requests that the EEOC dismiss these claims in their entirety.

Thank you very much for your consideration of MLGW's position in this matter. Should you need any additional information, please feel free to contact me directly.

Very truly yours,

Chandra S. Madison

CSM/

Enclosure(s)

cc:

---

[18] *Id.* (citing *Canitia v. Yellow Freight System, Inc.*, 903 F.2d. 1064, 1066 (6th Cir. 1990)).

# **<u>Exhibit A</u>**

# MLGW PERSONNEL POLICY MANUAL

**NUMBER: 23-02**

**EFFECTIVE DATE: 01/15/80**

**SUBJECT: Disciplinary Actions**

## I. PURPOSE

To provide for fair and consistent disciplinary action in the event an employee fails to observe company rules and regulations.

## II. REFERENCES

A. Memorandum of Understanding, Articles: Probationary Period of Employment, Discipline and Discharge.

B. Labor Relations Bulletin, No. 3

## III. DEFINITIONS

A. Exempt Employees - Employees who work in job classifications excluded from the collective bargaining agreement are classified as exempt employees.

B. Non-Exempt Employees - Employees who work in job classifications included in the collective bargaining agreement are classified as non-exempt employees.

## IV. SCOPE

This policy is applicable to all employees of the company. Sections of the policy which are applicable only to permanent employees will be designated accordingly.

## V. POLICY STATEMENT

It is the policy of MLGW to initiate appropriate disciplinary action whenever an employee violates company rules and regulations. These rules and regulations, which prescribe acceptable conduct for employees, are necessary for the effective and efficient operation of the Division and the protection of the rights and safety of all employees. When a violation occurs, supervision will consider the seriousness of the offense committed and the past record of the offending employee in determining an appropriate action.

Disciplinary measures should be applied in fair and consistent manner. The skill which a supervisor displays in handling a disciplinary situation is an important determiner of the results which will follow. This policy will be administered in keeping with the non-discriminatory practices of our company.

A. Progressive Discipline (Permanent Employees)

Discipline, when properly and fairly administered by management, can be a very effective tool in correcting the problem employee as well as a tool for improving overall employee morale. In administering discipline, supervisors should keep in mind the following components of progressive discipline:

1. Disciplinary action should always be designed to fit the offense. Prior to taking action, the supervisor must always ask himself/herself one question. "Have I kept the employees under my supervision properly informed of the Division's rules and regulations?"

2. In order to make a disciplinary action stick and avoid future reversal by a higher authority, the supervisor must be fair with the employee and give him/her ample opportunity to improve and correct his/her problem.

3. Progressive discipline will allow the employee every opportunity to correct himself/herself for the following reasons:

   a. It is administered in progressive steps.

   b. The employee is told what corrective measures are necessary on his/her part in order to prevent future discipline or possible discharge.

B. Conduct During Investigations

Employees will furnish information and testify freely and honestly in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or willfully providing inaccurate testimony in connection with an investigation or hearing may be grounds for disciplinary action up to and including discharge.

C. Security for Hearings

All parties involved in hearings regarding termination of employment, possible violations of last-chance agreements, or other situations where management deems additional security measures to be appropriate are subject to metal detector searches by security personnel.

Items that could be used as a weapon or possibly conceal a weapon will not be allowed in the meeting area. No pocket knives, tools or tool belts will be allowed into the meeting room. Purses, briefcases, backpacks and other containers may be allowed in the meeting room only after a thorough search by security personnel.

For additional information, refer to Personnel Policy #23-32, Employee Inspections and searches.

VI. PROCEDURE

A. Administering Progressive Discipline (Permanent Employees)

These five (5) progressive steps will be followed under normal circumstances:

a. Oral reprimand

b. Written reprimand

c. Written reprimand with suspension and warning of more serious disciplinary action

d. Written reprimand with longer suspension and warning of more serious disciplinary action, including possible discharge

e. Discharge

The seriousness of the offense will determine how many steps are to be followed. If a first offense is serious enough and may lead to more serious disciplinary action, supervision may bypass the oral reprimand and give a written reprimand. Under certain conditions, even discharge may be justified for a first offense (see the Discipline and Discharge Article of the Memorandum of Understanding).

NOTE 1: In giving written reprimands, it is recommended that management not only give the employee and steward a copy of written reprimands but also have witnessing parties sign them. It is also suggested that supervision:

a. State that a reprimand is being given and not just a warning.

b. Not define the exact punishment for any future offense, since the punishment should be designed to fit the particular offense when it occurs.

c. Listen to the employee's point of view and weigh all circumstances before making a final decision.

d. Administer discipline in a deliberate and progressive manner.

NOTE 2: Supervision may not suspend an employee on the same day such employee commits an offense. A suspension may go into effect no sooner than the day after the offense occurs.

B. Discussion of Cases Involving Discharges

Each case involving an employee's discharge will be discussed with the Manager of Personnel prior to such discharge.

C. Letter Stating Reason for Discharge

Whenever an employee is discharged, his/her department head will write a letter to the employee stating the reason(s) for such discharge. A copy of the letter will be sent to the Personnel Department and placed in the employee's personnel folder. For non-exempt employees, additional copies will be sent to the Labor Relations Department and the Union Business Manager.

D. Discharge During Probationary Period of Employment (Permanent Employees)

1. Exempt Employees

During the probationary period of employment, an exempt employee may be terminated at any time for any cause without recourse to the Complaint Procedure unless a claim of discrimination is cited as the underlying cause of such discharge.

2. Non-Exempt Employees

During the probationary period of employment, a non-exempt employee may be terminated at any time for any cause without recourse to the Grievance Procedure or appeal as long as such cause for discharge is not in violation of the Non-Discrimination Article of the Memorandum of Understanding.

E. Discipline and Discharge of Non-Exempt Employees (Permanent Employees)

See the Discipline and Discharge Article of the Memorandum of Understanding.

VII. RESPONSIBILITY

A. Each supervisor will be responsible for applying disciplinary measures in a fair and consistent manner.

B. Any questions regarding the interpretation or administration of this policy should be addressed to the Manager of Labor Relations.

Last Update 02/02/2004

Back to the Personnel Policy Manual Table of Contents

© 1999 Memphis Light, Gas & Water
Memphis, Tennessee

Return to the MLGW Intranet Main Page

## Labor and Employee Relations Department

Labor Relations Bulletin

### Conduct During Investigations

It is important to insure that all employees are aware of MLGW's expectations in regard to conduct during investigations. Those expectations are outlined in Personnel Policy #23-02 as follows: Employees will furnish information and testify freely and honestly in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or willfully providing inaccurate testimony in connection with an investigation or hearing may be grounds for disciplinary action up to and including discharge. **It is anticipated that employees will continue to support management's efforts to investigate situations that arise and determine facts necessary to make decisions.**